■ STEVEN L. AARON, Respondent, v ROEMER, WALLENS & MINEAUX, L. L. P., et al., Defendants, and RICHARD J. ZAHNLEUTER, Appellant. [707 NYS2d 711] —Rose, J. Appeal from an order of the Supreme Court (Bradley, J.), entered October 8, 1999 in Ulster County, which denied defendant Richard J. Zahnleuter's motion for summary judgment dismissing the complaint against him.

In 1995, two consolidated Federal sexual harassment suits (hereinafter the Federal action) were brought against plaintiff. Although plaintiff had neither signed a written retainer agreement nor paid a retainer fee, defendant law firm Roemer, Wallens & Mineaux, L. L. P. (hereinafter RWM) appeared on his behalf and filed answers in July and September 1995. Defendant Richard J. Zahnleuter (hereinafter defendant) was the member of RWM primarily responsible for plaintiff's representation in the Federal action.

The relationship between plaintiff and RWM quickly deteriorated, and on October 24, 1995 defendant faxed a letter to plaintiff stating that by noon of the following day RWM would mail a letter to District Court applying for permission to withdraw as his attorneys in the Federal action because of plaintiff's failure, after repeated requests, to sign a retainer agreement and pay for legal services. On behalf of the firm, defendant then sent a letter to District Court seeking withdrawal based on plaintiff's nonpayment, his failure to respond to RWM's requests for documents and his having involved the firm in misrepresentation and fraud in submission of a claim for insurance coverage for his Federal action legal expenses. District Court in turn sent plaintiff a letter dated November 3, 1995 indicating that withdrawal would be permitted unless a written statement of plaintiff's objections to the application was received no later than November 6, 1995.

On November 8, 1995, plaintiff sent a letter to District Court stating that he would not contest RWM's motion because he did not feel he "would be able to mend this now fractured relationship." Plaintiff also stated that he was seeking new counsel. On November 10, 1995, plaintiff sent a letter to RWM asking for a meeting to "finalize" his relationship with the firm. This letter indicated that a copy was also sent to an attorney not associated with RWM. On November 15, 1995, defendant signed a stipulation extending the time for the Federal plaintiffs to respond to certain discovery demands. Finally, on November 17, 1995, District Court signed an order noting the untimeliness of plaintiff's written response, finding grounds warranting withdrawal and permitting RWM to withdraw. At some point, plaintiff retained new counsel. Following trial in April 1998, the jury in the Federal action awarded compensatory and punitive damages to the Federal plaintiffs.

Plaintiff commenced the present legal malpractice action on November 17, 1998 by filing a summons with notice. In March 1999, in response to plaintiff's posttrial motion in the Federal action, District Court held that one of the Federal claims would

have been time barred but that plaintiff had waived this affirmative defense by failing to plead it in his answer. Plaintiff then served a complaint in this action alleging that defendants were negligent in failing to plead the affirmative defense in the Federal action and citing District Court's decision to show that this defense would have had merit. Defendant's answer asserted that the three-year Statute of Limitations for attorney malpractice barred the present action, and defendant then moved for summary judgment dismissing the complaint against him based on this defense. Supreme Court denied defendant's motion on the ground that the attorney-client relationship between RWM and plaintiff did not terminate until November 17, 1995 when the order was issued permitting RWM to withdraw in the Federal action and that, therefore, this action was commenced within the applicable three-year limitations period. Defendant now appeals and, based on the particular facts presented here, we reverse.

A claim to recover damages for legal malpractice accrues when the malpractice is committed (see, *Santulli v Englert, Reilly & McHugh*, 78 NY2d 700, 707; *Pollicino v Roemer & Featherstonhaugh*, 260 AD2d 52, 54) and must be interposed within three years thereafter (CPLR 214 [6]). Here, it is uncontroverted that the omissions allegedly constituting legal malpractice occurred in July and September 1995, more than three years before commencement of this action. As a result, the action is time barred unless the Statute of Limitations was tolled by the continuous representation rule (see, *Glamm v Allen*, 57 NY2d 87). To invoke this rule, however, there must be "clear indicia of an ongoing continuous, developing, and dependent relationship between the client and the attorney" (*Luk Lamellen U. Kupplungbau GmbH v Lerner*, 166 AD2d 505, 506).

As we recently confirmed in *Pollicino v Roemer & Featherstonhaugh* (*supra*, at 54, quoting *Glamm v Allen, supra,* at 93-94, quoting *Greene v Greene*, 56 NY2d 86, 94), the rationale underlying the continuous representation rule is that "the client ' "has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered" * * * [n]either is a person expected to jeopardize his pending case or his relationship with the attorney handling that case during the period that the attorney continues to represent the person.' " The rule also recognizes "that the professional 'not only is in a position to identify and correct his or her malpractice, but is best placed to do so' "

(*id.*, at 54-55, quoting *McDermott v Torre*, 56 NY2d 399, 408). Because the rule ceases to operate when these considerations no longer prevail (*see*, 260 AD2d, at 55), courts have recognized the client's continuing trust and confidence as a prerequisite to the rule's application (*see*, *Pittelli v Schulman*, 128 AD2d 600, 601; *see also*, *Coyne v Bersani*, 61 NY2d 939) and we believe it is the controlling factor here.

Plaintiff's letter to District Court clearly evidences that no later than November 8, 1995 he perceived that the relationship with his attorneys had been irretrievably broken. His lack of confidence in defendants is also demonstrated by his complaint to District Court concerning the inclusion of "sensitive documents" in their application to withdraw. The mere facts that plaintiff was not yet represented by another attorney, that defendant signed a stipulation identifying himself as plaintiff's attorney on November 15, 1995 and that defendant was not formally permitted to withdraw until November 17, 1995, fail to establish that plaintiff's trust and confidence in defendants continued or was restored after November 8, 1995, particularly since plaintiff was then unaware of the latter two facts. In these special circumstances, where the attorney promptly moves to withdraw and the client acknowledges in writing an irreparable deterioration of the attorney-client relationship, we conclude that the relationship necessary to invoke the continuous treatment rule did not persist until formal termination of the nominal representation by defendants, but rather ceased with the disruption of the client's trust and reliance prior to November 8, 1995.

Plaintiff's additional contention that his malpractice claim should be subject to a six-year Statute of Limitations because it sounds in contract and accrued prior to the amendment to CPLR 214 (6) was not preserved for our review. Instead of raising this point in opposition to defendant's motion, plaintiff expressly conceded that the three-year Statute of Limitations set forth in CPLR 214 applied to his claim. However, were we to consider this contention, it would be unavailing because where a cause of action accrued prior to the amendment to CPLR 214 (6) and was not asserted until after the amendment, the issue is whether the action was commenced within a reasonable time of the September 4, 1996 effective date of the amendment (*see*, *Easton v Sankel*, 268 AD2d 861, 862-863). Plaintiff commenced his action 26 months after the effective date of the amendment, a period that is unreasonable as a matter of law (*see*, *id.*, at 863).

Thus, as a matter of law, Supreme Court erred in denying

summary judgment to defendant on the issue of the Statute of Limitations because the alleged legal malpractice occurred more than three years before this action was commenced.

Spain, J. P., Carpinello, Mugglin and Lahtinen, JJ., concur. Ordered that the order is reversed, on the law, with costs, motion granted, summary judgment awarded to defendant Richard J. Zahnleuter and complaint dismissed against him.